IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

PRM ENERGY SYSTEMS, INC.                                    PLAINTIFF

          v.                Civil No. 04-6157 & 05-6061

PRIMENERGY, L.L.C., an
Oklahoma limited liability
company, and individuals DON
R. MELLOTT and W.N. (BILL)
SCOTT                                                       DEFENDANTS

          and

ENERGY PROCESS TECHNOLOGIES,
INC., an Oklahoma Corporation,
and PRIMENERGY, L.L.C., an
Oklahoma Limited Liability
Company                                                     PLAINTIFFS

          v.

PRM ENERGY SYSTEMS, INC.,
an Arkansas Corporation                                     DEFENDANT

                         O R D E R

     Now on this 15th day of November, 2005, come on for
consideration the following motions:

     *    Primenergy's **Motion To Dismiss First Amended Complaint
          Of Defendant Primenergy, L.L.C.** (document #28);

     *    **Motion To Dismiss First Amended Complaint Of Defendants
          Scott And Mellott** (document #29);

     *    **Defendants' Motion To Stay Consideration Of Plaintiff's
          First Revised Motion And Application For Partial**

**Confirmation And Partial Vacation And Partial Modification Of Arbitration Award Or In The Alternative To Transfer Such Motion To The Northern District Of Oklahoma** (document #37); and

*   PRM Energy Systems' **Motion For Leave To File Counterclaim And Join Affiliated Corporations** (document #7 in case number 05-6061),

and from said motions, the supporting documentation, the responses thereto, and the various pleadings filed in these consolidated cases, the Court finds and orders as follows:

1. These consolidated cases arise out of a business relationship gone sour, which has generated many disputes and much litigation. The parties involved in these disputes are:

*   PRM Energy Systems, Inc. ("PRM"), an Arkansas corporation in the business of licensing patents and technology relating to the gasification of biomass (solid or liquid organic) materials into gaseous forms of energy.

*   Primenergy, Inc., an Oklahoma corporation formed by Ron Bailey, Sr. (a principal of PRM), Ron Bailey, Jr., and Don R. Mellott, to develop and build gasification technology.

*   Primenergy, L.L.C., an Oklahoma limited liability company ("Primenergy"), the successor entity to Primenergy, Inc. Neither Bailey has any ownership interest in Primenergy, which is said to be wholly owned by Energy Process Technology, Inc.

("EPTI").

    \*    EPTI, an Oklahoma corporation owned by Mellott.

    \*    W.N. (Bill) Scott, an Oklahoma resident, president of Primenergy.

2.    Since 2004, the parties have been involved in litigation and arbitration over their mutual business dealings. The following events, set forth in chronological order, are relevant to pending issues:

    \*    On **November 12, 2004**, Primenergy demanded that PRM engage in arbitration, pursuant to certain contracts between the two companies. The following questions were submitted for arbitration:

    -- whether PRM was entitled to collect royalties on two expired patents;

    -- if so, what was the amount of such royalties;

    -- whether PRM had provided any protected information with regard to the expired patents;

    -- whether PRM violated a contract by granting a Japanese company (TSK) a license or option to purchase a license;

    -- if so, what were Primenergy's damages; and

    -- what constitutes the continuing "License Technology" belonging to PRM?

    \*    On **November 23, 2004**, EPTI filed suit against PRM in the

-3-

United States District Court for the Northern District of Oklahoma ("Case 04-888"). The Complaint in Case 04-888 sought a declaratory judgment that EPTI was the owner of two unexpired patents, United States Patent No. 6,312,505 (the "'505 Patent") and United States Patent No. 6,530,978 (the "'978 Patent"), alleging that the applications for these Patents had been assigned to EPTI, but that PRM was claiming ownership thereof.

*   On **December 30, 2004**, PRM filed suit in the United States District Court for the Western District of Arkansas against Primenergy, Mollott, and Scott ("Case 04-6157"). The Complaint in Case 04-6157 alleged an on-going binding arbitration of contractual disputes between the parties, and stated that the purpose of filing Case 04-6157 was "to establish jurisdiction over this action, to assert claims outside the jurisdiction of the arbitrator and to toll applicable statutes of limitation." Counts were stated for breach of contract, fraud, conspiracy, misappropriation of trade secrets, unfair competition, and tortious interference with business expectancy. The relief sought included various injunctions, enforcement of "the terms of the arbitration proceeding currently pending," and compensatory and punitive damages.

*   On **January 24, 2005**, PRM filed a Motion To Dismiss in Case 04-888, alleging that the District Court there had no subject matter jurisdiction over EPTI's claim because there was no case or

-4-

controversy between PRM and EPTI.

*   On **March 8, 2005,** the Arbitrator issued a partial
decision in the Arbitration, in which he held that PRM and
Primenergy are joint owners of the '505 Patent and the '978
Patent.

*   The Arbitration was tried on March 29 and April 1, 2005.

*   On **April 22, 2005,** the Arbitrator issued his Final
Ruling And Award ( the "Arbitration Award").

*   That same day, **April 22, 2005,** Primenergy opened yet
another case in the United States District Court for the Northern
District of Oklahoma against PRM ("Case 05-222"), filing an
Application and Motion To Confirm and Partially Modify Arbitration
Award.   The Application noted, in a footnote, the existence of
Case 04-888 and Primenergy's intention to ask that the two
Oklahoma cases be consolidated.

*   On **April 28, 2005,** Primenergy filed a Second Amended
Application And Motion To Confirm Arbitration Award in Case 05-
222.  In this filing, Primenergy withdrew its earlier request for
modification, and instead simply asked for confirmation of the
Arbitration Award.[1]

*   On **April 29, 2005,** an Order was entered in Case 04-888,
denying PRM's motion to dismiss for lack of subject matter

---

[1]Primenergy did, however, hedge its bets on the issue, stating that it was not, by
seeking confirmation, "waiving any right, in the event [PRM] moves to vacate or
partially modify the Final Ruling and Award, to request any specific vacation or
modification."

jurisdiction, and noting that "PRM's argument that the dispute between the parties has been ajudicated [sic] by the arbitration proceedings in Arkansas should be submitted to the Court in a motion for summary judgment."

    \*    On **May 3, 2005**, EPTI filed a motion seeking to consolidate Case 05-222 into Case 04-888, alleging that the two cases involved common questions of law and fact.

    \*    On **May 11, 2005**, PRM filed a Motion For Modification And Correction Of Award with the Arbitrator.[2]

    \*    On **May 12, 2005**, PRM filed its Answer in Case 04-888. Among other defenses, PRM asserted the following:

    (a) that there was no case or controversy between PRM and EPTI when Case 04-888 was filed;

    (b) that the Oklahoma court did not have subject matter jurisdiction because the case was not ripe, due to the pending arbitration;

    (c) that the case was barred by issue preclusion, law of the case, collateral estoppel, and res judicata based on the Arbitration Award;

    (d) that the claim was barred by "the defense of arbitration and award because the ownership of the U.S. Patents was decided by a Final Ruling and Award in the Arbitration

---

[2]Although the Certificate of Service on this document indicates it was filed on April 11, 2005, the Court believes that date is in error, and that the document was actually filed on May 11, 2005. The Final Arbitration Award was not rendered until April 22, 2005, and the pages of PRM's motion contain the subscript date of May 11, 2005.

-6-

granting joint ownership in the patents to PRM, although such award is subject to a Motion for Modification and Correction of Award filed by PRM."

\* On **May 16, 2005**, PRM filed, in Case 04-6157, a Motion For Confirmation And Modification Of Arbitration Award. While seeming to request confirmation and modification, this motion actually asked the Court to *defer* confirming and modifying the Arbitration Award, because the issue of modification was then pending before the Arbitrator.

\* Also on **May 16, 2005**, PRM filed a Motion To Dismiss Or Transfer Or Consolidate Action in Case 05-222. Transfer was sought to the United States District Court for the Western District of Arkansas, and consolidation was sought with Case 04-6157.

\* On **May 20, 2005**, PRM filed a Motion For Summary Judgment in 04-888, alleging that to the extent that there was any case or controversy between EPTI and PRM over ownership of Patent '978 and Patent '505, that dispute was resolved in the Arbitration.

\* On **June 22, 2005**, the Arbitrator denied PRM's Motion For Modification And Correction Of Award.

\* On **July 21, 2005**, PRM again moved, in Case 04-6157, for confirmation/ modification/vacation of the Arbitration Award.

\* On **July 29, 2005**, Primenergy, Scott and Mellott moved, in Case 04-6157, for a stay of consideration of PRM's motion for

-7-

confirmation/modification/vacation, or transfer of the case to the United States District Court for the Northern District of Oklahoma. Their motion noted, aptly, that "[t]he situation is one in limbo."

\*     On **August 1, 2005,** Case 05-222 was consolidated into Case 04-888, and the newly-consolidated case was transferred to the United States District Court for the Western District of Arkansas, where it was assigned case number 05-6061 ("Case 05-6061"). In his Order directing consolidation and transfer, Senior Judge James O. Ellison stated succinctly:

> All of this litigation involves the same issue, i.e. ownership of the same patents. It is clear that if EPTI (the parent of Primenergy), is claiming an ownership interest in the patents, they are an indispensable party and should have been made a party to the arbitration proceedings. The Court finds that as a matter of judicial economy, the two Oklahoma cases should be consolidated into the lower numbered case, Case No. 04-CV-888.
>
> The Court is aware of the "first to file" rule discussed in *P&P Ind. Inc. v. Sutter,* 179 F.3d 861 (10th Cir. 1999). However, in light of the fact that the agreements were entered into by PRM and Primenergy and not EPTI, the "first to file" rule as applied to this case should point toward the first lawsuit filed by the contracting parties, which would be the Arkansas litigation. The Court finds that the proper venue to resolve the issues between these parties is the Western District of Arkansas and this case, after consolidation, should be transferred to the United States District Court for the Western District of Arkansas.

\*     On **October 7, 2005,** Case 05-6061 was consolidated into Case 04-6157.

3.     At the request of the Court, the parties each furnished

-8-

an analysis of issues raised in pending motions in the various cases now consolidated into Case 04-6157 that remain pending and are now ripe for decision. The Court finds these issues embraced in the motions listed at the beginning of this Order, and in its rulings thereon, *infra*.

4.    In its Motion To Dismiss First Amended Complaint, separate defendant Primenergy argues that PRM's claims against it should be dismissed because they are claims that must be submitted to arbitration.    Primenergy also contends that the First Amended Complaint improperly attempts to convert contract claims into tort claims; fails to allege fraud with the requisite particularity; and fails to name EPTI, a necessary party, as a defendant.

5.    The business relationship between PRM and Primenergy is governed by a series of contracts, identified as the General Agreement, the Territorial License Agreement, the Confidentiality Agreement, the Consulting Agreement, and the Option To Expand Territory (sometimes referred to *in toto* as "the 1999 Agreements").

The General Agreement, by its terms, is to be construed according to Arkansas law. It contains an Arbitration Clause providing that "[a]ll disputes under this General Agreement that cannot be resolved by the parties shall be decided by arbitration." The Territorial License Agreement, Confidentiality Agreement, Consulting Agreement, and Option each contains a

-9-

provision which makes it a part of the General Agreement. These subsidiary agreements are, therefore, also covered by the General Agreement's Arbitration Clause.

Arkansas law strongly favors arbitration, although it imposes certain restrictions that federal law does not. For example, it specifically exempts "tort matters" from arbitration. **A.C.A. §16-108-201**; **Lehman Properties, Ltd. Partnership v. BB&B Construction Company, Inc,**, **81 Ark. App. 104, 98 S.W.3d 470 (2003)**. However, where the underlying dispute involves interstate commerce, Arkansas law recognizes that the Federal Arbitration Act ("FAA"), rather than the Arkansas Uniform Arbitration Act, controls. **Lehman**, **id.**; **Walton v. Lewis**, **337 Ark. 45, 987 S.W.2d 262 (1999)**. The FAA applies to "a contract evidencing a transaction involving commerce," **9 U.S.C. §2**, and defines "commerce" as "commerce among the several States or with foreign nations," **9 U.S.C. §1**.

Given the nature of the business relationship between PRM and Primenergy, as evidenced by the pleadings, there is no doubt in the Court's mind that the underlying disputes of the parties involve interstate commerce, both as that term is commonly understood and as it is defined in the FAA. The Court therefore concludes that the arbitration issues in this case are controlled by the FAA.

The FAA does not exempt tort claims from arbitration, but instead sweeps tort claims into the ambit of arbitration clauses

-10-

unless their wording is such that it can be seen that the parties did not contract to arbitrate such claims.   See, e.g., **CD Partners, LLC v. Grizzle, 424 F.3d 795 (8th Cir. 2005)**:

> The arbitration clauses in the franchise agreements are ·
> worded broadly to cover "any claim, controversy or
> dispute arising out of or relating to Franchisee's
> operation of the Franchised business under the
> agreement." There is a strong national policy in favor
> of arbitration. As a consequence, doubts about whether
> an arbitration clause should be construed to cover a
> particular dispute are generally resolved in favor of
> arbitration. Broadly worded arbitration clauses such as
> the ones at issue here are generally construed to cover
> tort suits arising from the same set of operative facts
> covered by a contract between the parties to the
> agreement.

**424 F.3d at 800** (internal citations omitted).

While the arbitration clause at issue here is not as broadly worded as those in **CD Partners**, it certainly is not crafted so as to limit or restrict the categories of disputes covered.    It applies to "[a]ll disputes under this General Agreement that cannot be resolved by the parties."   Given the nature of the disputes herein presented, it is clear that none of them -- whether sounding in contract or in tort -- would exist but for the General Agreement and its subsidiary agreements.    The Court therefore concludes that both the tort and contract claims asserted by PRM against Primenergy are "disputes under" the General Agreement and subject to arbitration.

6.   Primenergy also contends that plaintiff's claims against it are barred by principles of *res judicata*, flowing from the now-

-11-

completed arbitration. PRM counters that the tort claims it asserts are different from the contract claims submitted to the arbitrator, being based on malfeasance rather than nonfeasance.

The Arkansas Supreme Court has held that "except in certain limited situations, a valid and final award by arbitration has the same effect under the rules of res judicata, subject to the same exceptions and qualifications, as a judgment of a court." **Riverdale Development Co., LLC v. Ruffin Building Systems, Inc., 356 Ark. 90, 146 S.W.3d 852 (2004).** Federal law is the same. **Val-U Construction Co. of South Dakota v. Rosebud Sioux Tribe, 146 F.3d 573 (8th Cir. 1998).**

Res judicata operates similarly in both the Arkansas and the federal scheme of things. Under Arkansas law, "res judicata bars not only the re-litigation of claims which were actually litigated in the first suit, but also those which could have been litigated. Where a case is based on the same events as the subject matter of a previous lawsuit, res judicata will apply even if the subsequent lawsuit raises new legal issues and seeks additional remedies." **Barclay v. Waters, 357 Ark. 386, --- S.W.3d — (2004).**

Under federal law,

[t]he preclusion principle of res judicata prevents "the
relitigation of a claim on grounds that were raised or
could have been raised in the prior suit." We undertake
a three part inquiry to determine whether res judicata
applies addressing these issues: (1) whether the prior
judgment was rendered by a court of competent
jurisdiction; (2) whether the prior judgment was a

-12-

final judgment on the merits; and (3) whether the same cause of action and the same parties or their privies were involved in both cases. . . .

   With regard to the third requirement of res judicata, we "adopted the position of the Restatement (Second) of Judgments in determining whether two causes of action are the same for res judicata purposes." Section 24 of the Restatement (Second) of Judgments provides that ["]When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar[,]... the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose. What factual grouping constitutes a 'transaction,' and what groupings constitute a 'series,' are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.["]

   Thus, "a claim is barred by res judicata if it arises out of the same nucleus of operative facts as the prior claim.

   "[R]eliance. . . on different substantive law and new legal theories does not preclude the operation of res judicata....[W]here a plaintiff fashions a new theory of recovery or cites a new body of law that was arguably violated by a defendant's conduct, res judicata will still bar the second claim if it is based on the same nucleus of operative facts as the prior claim" In effect, "res judicata bars relitigation not only of those matters that were actually litigated, but also those which could have been litigated in the earlier proceeding."

**Banks v. International Union Electronic, Electrical, Technical,**

**Salaried and Machine Workers**, 390 F.3d 1049 (8th Cir.

**2004)** (internal citations omitted).

   While the Arbitration Award is not yet final, both parties

-13-

have moved the Court to finalize it, either by confirmation, vacation, modification, or some combination of these actions. Thus, the Court concludes that the Award will be, at some point in this litigation, "a valid and final award by arbitration."

For all the foregoing reasons, the Court finds that PRM's claims against Primenergy cannot be litigated, but must, instead, be submitted to arbitration. To the extent that issues raised in this case, as between PRM and Primenergy, were or could have been resolved in the now-completed arbitration, res judicata will bar their relitigation here. To the extent that they could not have been resolved in the arbitration that has now been completed -- either because they did not yet exist or were then unknown -- they must be submitted to arbitration before this Court can act on them. All claims between PRM and Primenergy under the General Agreement must be resolved by arbitration, and this Court is precluded from taking cognizance of any claims raised, as between PRM and Primenergy, except to the extent that it has been, or will be, asked to confirm, vacate, or modify an Arbitration Award.

7. Because the Court's disposition of the arbitration issues removes all of PRM's claims against Primenergy from this suit, except for those relating to vacation, modification, or confirmation of the Arbitration Award, the Court need not, and will not, address Primenergy's other arguments for dismissal of the First Amended Complaint.

-14-

8. Individual defendants Mellott and Scott also move for dismissal of the First Amended Complaint, making the following arguments:

(a) that Counts II, III, and VI fail to state a claim against them upon which relief can be granted, in that these are in reality breach of contract claims against Primenergy;

(b) that Count II fails to plead fraud with sufficient particularity;

(c) that Count III fails because a corporate entity cannot conspire with its own officers and employees;

(d) that Count IV fails to state a claim for misappropriation of trade secrets;

(e) that Count V fails to state a claim for unfair competition;

(f) that Count VI fails to state a claim for tortious interference with business expectancy; and

(g) that plaintiff failed to join a necessary party.

9. The contention that Counts II, III, and VI fail to state tort claims against Scott and Mellott, in that these are in reality breach of contract claims against Primenergy, may be readily disposed of. It is true, as these defendants argue, that an action based upon a breach of promise is contractual in nature, and one based upon breach of a non-contractual duty is tortious in nature. **Curry v. Thornsberry, 81 Ark. App. 112, 98 S.W.3d 477**

**(2003)**. It is also true, as defendants contend, that plaintiff does not allege that Mellott and Scott are parties to any agreement with plaintiff. Thus, *a fortiori*, any claim against them does not sound in contract.

It is a far cry from that conclusion, however, to the one urged by Mellott and Scott, i.e., that there can be no claim of fraud, conspiracy, or tortious interference asserted against them. The allegations as to fraud (Count II), conspiracy (Count III), and tortious interference with business expectancy (Count VI) state facts which, if proven up, would support a finding that Mellott and Scott committed these respective torts, albeit in the context of their employment by one who was in a contractual relationship with the plaintiff. This asserted motion for dismissal will, therefore, be denied.

10. The contention of Mellott and Scott that the First Amended Complaint fails to plead a claim of fraud, as against them, with sufficient particularity also merits little analysis. Plaintiff does not rely on mere conclusory allegations, but details a series of acts by these defendants which, if proven up, would support a finding of fraud. These details are clearly sufficient to put Mellott and Scott on notice of what it is they are alleged to have done that was fraudulent. This is all that is required by **F.R.C.P. 9(b)**:

> We must interpret the requirements of Rule 9(b) in harmony with the principles of notice pleading.... The

-16-

special nature of fraud does not necessitate anything other than notice of the claim; it simply necessitates a higher degree of notice.... Thus, a plaintiff must specifically allege the circumstances constituting fraud, including such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentations and what was obtained or given up thereby.

**Abels v. Farmers Commodities Corp., 259 F.3d 910 (8th Cir. 2001)** (internal citations and quotation marks omitted). The motion to dismiss Count II will, therefore, be denied.

11. The argument that Count III should be dismissed as to Mellott and Scott because a corporation cannot conspire with its own officers and agents is well taken, insofar as a conspiracy is alleged only between Primenergy and Mellott, Scott, and McQuigg. However, the First Amended Complaint also alleges a conspiracy involving these defendants and a Japanese company, Kobe Steel, Ltd. ("Kobe"), as to which the contention for dismissal of Mellott and Scott is irrelevant. Insofar as the First Amended Complaint alleges a conspiracy involving Kobe, the Court finds that a claim is stated. The motion to dismiss as to Count III will, therefore, be denied, but the reach of that count will be limited to allegations that relate to defendants' interaction with Kobe.

12. Mellott and Scott next argue that they cannot be held liable for misappropriation of trade secrets (Count IV) because they did not acquire those trade secrets by "improper means." This is not, however, a necessary element of the tort. As plaintiff points out, under Arkansas law "misappropriation" also

-17-

occurs upon "[d]isclosure or use of a trade secret of another without express or implied consent by a person who . . . at the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was . . . [a]cquired under circumstances giving rise to a duty to maintain its secrecy or limit its use . . . ." **A.C.A. §4-75-601.** Plaintiff's pleading alleges facts which, if proven, would support a finding that Mellott and Scott misappropriated trade secrets under these provisions of the statute, and the motion to dismiss Count IV will, therefore, be denied.

13. With regard to the allegations of Count V, that they violated the Lanham Act, Mellott and Scott contend that plaintiff has failed to state a claim upon which relief can be granted. It is settled law that a complaint should not be dismissed for failure to state a claim unless, viewing the allegations of the complaint in the light most favorable to plaintiff, it appears beyond doubt that plaintiff could not prove up a set of facts which would entitle it to relief. That is to say, there must be some "insuperable bar to relief" on the face of the complaint. **Krentz v. Robertson Fire Protection District, 228 F.3d 897 (8th Cir. 2000).**

PRM's Lanham Act claim is said to arise under **15 U.S.C. §1125.** That section provides, in relevant part, that

[a]ny person who, on or in connection with any goods or

-18-

services . . . uses in commerce any word, term, name,
symbol, or device, or any combination thereof, or any
false designation of origin, false or misleading
description of fact, or false or misleading
representation of fact, which (A) is likely to cause
confusion, or to cause mistake, or to deceive as to the
affiliation, connection, or association of such person
with another person, or as to the origin, sponsorship,
or approval of his or her goods, services, or commercial
activities by another person . . . shall be liable in a
civil action by any person who believes that he or she
is or is likely to be damaged by such act.

The Court has reviewed the factual allegations of the First
Amended Complaint, and even considering them in the light most
favorable to PRM, finds that they do not allege facts which would,
if proved, would entitle PRM to a verdict on its Lanham Act claim.
The gravamen of the allegations is that Mellott and Scott were
giving misleading information to PRM, not to others about PRM.
PRM goes so far as to allege that Kobe Steel (the customer
involved in the alleged deceptions) knew that the statements being
made to it by Mellott and Scott about Primenergy's right to the
technology in question were false.

While PRM attempts to shore up its pleadings by allegations
contained in its brief and attachments thereto, this is not
sufficient. The statement of a claim showing entitlement to
relief is to be made in a pleading, **F.R.C.P. 8,** and a motion, or
response thereto, is not a pleading, **F.R.C.P. 7.**

Because there are no allegations in the First Amended
Complaint that would fall within the parameters of a Lanham Act
claim, the Court finds that the motion of Mellott and Scott to

-19-

dismiss this claim, as to them, should be granted.

14. Finally, Mellott and Scott argue that the First Amended Complaint must be dismissed as to them because plaintiff failed to add a necessary party, EPTI. The Court finds this argument moot, inasmuch as EPTI became a party to this suit by means of its consolidation with the Oklahoma cases.

15. The Court turns now to **Defendants' Motion To Stay Consideration Of Plaintiff's First Revised Motion And Application For Partial Confirmation And Partial Vacation And Partial Modification Of Arbitration Award Or In The Alternative To Transfer Such Motion To The Northern District Of Oklahoma.**

This motion requests that the Court defer ruling on PRM's First Revised Motion And Application For Partial Confirmation And Partial Vacation And Modification Of Arbitration Award until it rules on defendants' motions to dismiss. The Court agrees that this staging of the case is appropriate, and the motion will, therefore, be granted. Defendants are, however, directed to file such opposition to Plaintiff's First Revised Motion And Application For Partial Confirmation And Partial Vacation And Partial Modification Of Arbitration Award as they desire this Court to consider, on or before November 22, 2005. Upon the filing of such response[s], and any timely response to PRM's Motion For Preliminary Injunction And Partial Summary Judgment, the Court will take up all issues relative to the vacation,

-20-

modification, and/or confirmation of the Arbitration Award.

16. Finally, the Court will address PRM's request that it be allowed leave to file a counterclaim against EPTI and join two additional subsidiaries of EPTI, Heater Specialists, Inc. ("HSI") and Mohawk Field Services ("Mohawk"), as defendants. EPTI opposes this motion, which was filed in Case 05-6061, pointing out that when it filed Case 04-888, PRM took the position that there was no case or controversy between PRM and EPTI. EPTI contends that PRM took this position solely as a matter of strategy, in order to facilitate its proposed transfer of Case 04-888 to the Western District of Arkansas. EPTI argues that PRM should be bound by this strategic decision, and denied the right to make a counterclaim against it. For its part, PRM continues to maintain that at the time it took its position in Case 04-888, there was no case or controversy between it and EPTI, but claims that now a controversy does exist between them.

Without going into the details, the Court will simply note that there has been a great deal of jockeying for position in this case, which has not contributed to a prompt disposition of the issues to be decided. That being said, the Court agrees with the analysis of Judge Ellison, i.e., that "in light of the fact that the agreements were entered into by PRM and Primenergy and not EPTI, the 'first to file' rule as applied to this case should point toward the first lawsuit filed by the contracting parties,

-21-

which would be the Arkansas litigation." The Tenth Circuit case upon which Judge Ellison relied is in accordance with Eighth Circuit law on the subject. See, e.g., **U.S. Fire Insurance Co. v. Goodyear Tire & Rubber Co.**, **920 F.2d 487 (8th Cir. 1990)** ("first-filed" rule not intended to be "rigid, mechanical, or inflexible," but "is to be applied in a manner best serving the interest of justice," and applies only "in the absence of compelling circumstances"). The Court, therefore, agrees that the proper forum for this litigation is the Western District of Arkansas, regardless of the maneuvering by which it arrived here. The Court also finds that justice requires that PRM be allowed to assert its counterclaim against EPTI, and leave to amend will, therefore, be granted pursuant to **F.R.C.P. 13(f)**. Finally, the Court finds that the claims against HSI and Mohawk should be allowed pursuant to **F.R.C.P. 20**.

IT IS **THEREFORE ORDERED** that Primenergy's **Motion To Dismiss First Amended Complaint Of Defendant Primenergy, L.L.C.** (document #28) is **granted**, and the claims asserted by PRM against Primenergy in the First Amended Complaint are hereby **dismissed**. This dismissal does not, however, end the case as to Primenergy, there being the remaining issues as to whether this Court should vacate, modify or confirm the Arbitration Award.

IT IS **FURTHER ORDERED** that the **Motion To Dismiss First Amended Complaint Of Defendants Scott And Mellott** (document #29)

-22-

is **granted in part and denied in part**.

The motion is **granted** as to PRM's Lanham Act claim against Mellott and Scott, and **denied** in all other respects.

**IT IS FURTHER ORDERED** that **Defendants' Motion To Stay Consideration Of Plaintiff's First Revised Motion And Application For Partial Confirmation And Partial Vacation And Partial Modification Of Arbitration Award Or In The Alternative To Transfer Such Motion To The Northern District Of Oklahoma** (document #37) is **granted**, and defendants are allowed up to and including November 22, 2005, to respond to Plaintiff's First Revised Motion And Application For Partial Confirmation And Partial Vacation And Partial Modification Of Arbitration Award.

**IT IS FURTHER ORDERED** that PRM Energy Systems' **Motion For Leave To File Counterclaim And Join Affiliated Corporations** (document #7 in case number 05-6061) is **granted**.

**IT IS SO ORDERED**.

           /s/ Jimm Larry Hendren
           **JIMM LARRY HENDREN**
           **UNITED STATES DISTRICT JUDGE**

-23-