```
                    IN THE UNITED STATES DISTRICT COURT
                        WESTERN DISTRICT OF ARKANSAS
                            HOT SPRINGS DIVISION


PRM ENERGY SYSTEMS, INC.                                          PLAINTIFF

            v.              Civil No. 04-6157

PRIMENERGY, L.L.C., an
Oklahoma limited liability
company, and individuals DON
R. MELLOTT and W.N. (BILL)
SCOTT                                                            DEFENDANTS

            and

ENERGY PROCESS TECHNOLOGIES,
INC., an Oklahoma Corporation,
and PRIMENERGY, L.L.C., an
Oklahoma Limited Liability
Company                                                          PLAINTIFFS

            v.

PRM ENERGY SYSTEMS, INC.,
an Arkansas Corporation                                           DEFENDANT

            and

PRM ENERGY SYSTEMS, INC.                                   COUNTER PLAINTIFF

            v.

ENERGY PROCESS TECHNOLOGIES, INC.,
HEATER SPECIALISTS, INC., and
MOHAWK FIELD SERVICES, INC. (all
Oklahoma corporations)                                   COUNTER DEFENDANTS

            and

PRM ENERGY SYSTEMS, INC.,
an Arkansas Corporation                                           PLAINTIFF

            v.

KOBE STEEL LTD.                                                   DEFENDANT
```

**O R D E R**

Now on this 19th day of June, 2006, come on for consideration the following motions:

* **Motion Of Individual Defendants Mellott And Scott For Judgment On Pleadings** (document #56);

* **Kobe Steel, Ltd.'s Motion For Judgment On The Pleadings** (document #63); and

* **Motion To Dismiss Of "Counter Defendant" Energy Process Technologies, Inc. And "Third Party Defendants" Heater Specialists, Inc. And Mohawk Field Services, Inc.** (document #65),

and from said motions, and the responses thereto, the Court finds and orders as follows:

1. The parties in this case are involved in a variety of business disputes arising out of certain contracts between PRM Energy Systems, Inc. ("PRM"), an Arkansas corporation in the business of licensing patents and technology relating to the gasification of biomass materials into gaseous forms of energy, and Primenergy, L.L.C. ("Primenergy"), an Oklahoma corporation which develops and builds gasification technology.

There are five interlocking contracts relevant to the disputes between the parties and the pending motions. Those contracts are identified as the General Agreement, the Territorial License Agreement, the Confidentiality Agreement, the Consulting

Agreement, and the Option To Expand Territory. As a group, the contracts are referred to as "the 1999 Agreements."

The General Agreement contains an Arbitration Clause providing that "[a]ll disputes under the General Agreement that cannot be resolved by the parties shall be decided by arbitration." Each of the other four contracts contains a provision which makes it a part of the General Agreement, and thus subject to the Arbitration Clause of the General Agreement.

Pursuant to the Arbitration Clause, various disputes sounding in contract between PRM and Primenergy were submitted to arbitration. An arbitral award (the "Award") was issued and has been confirmed by this Court. Left pending were those claims sounding in tort against all defendants.

By Order dated November 15, 2005, the Court found that those claims asserted by PRM against Primenergy which had not been litigated - and which were not barred by the doctrine of *res judicata* - had to be resolved by arbitration, and that the Court was "precluded from taking cognizance of any claims raised, as between PRM and Primenergy, except to the extent that it has been, or will be, asked to confirm, vacate, or modify an Arbitration Award."

2. The moving parties on the motions now under consideration contend that they, too, are entitled to enforce the Arbitration Clause as against PRM, and that any claims asserted by

PRM as against them can only be resolved by arbitration. They further contend that all such claims are barred by *res judicata* or collateral estoppel as a result of the previous arbitration, and that they are, therefore, entitled to dismissals.

The legal underpinning of these motions is **CD Partners, LLC v. Grizzle**, **424 F.3d 795 (8th Cir. 2005)**. In **CD Partners**, the Eighth Circuit held that

> [a] nonsignatory can enforce an arbitration clause against a signatory to the agreement in several circumstances. One is when the relationship between the signatory and nonsignatory defendants is sufficiently close that only by permitting the nonsignatory to invoke arbitration may evisceration of the underlying arbitration agreement between the signatories be avoided. Another is when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting [its] claims against the nonsignatory. When each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate.

**424 F.3d at 798** (internal citations and quotation marks omitted).

Each moving party asserts that it comes within one or the other - or both - of these categories. These assertions will be taken up individually, inasmuch as the movants are differently situated, but the Court will first examine the basic defense raised by PRM to all the motions here under consideration.

3. PRM's defense consists largely of asking the Court to reconsider its November 15, 2005, ruling that its tort claims are arbitrable. It relies heavily on **Volt Information Sciences, Inc.**

**v. Board of Trustees of the Leland Stanford Junior University**, **489 U.S. 468 (1989),** wherein the Supreme Court affirmed a Court of Appeals decision applying California law - which conflicted with the Federal Arbitration Act ("FAA") - to an arbitration where the parties had agreed that the arbitration would be governed by California law.  PRM contends that **Volt** requires the Court to follow the Uniform Arbitration Act of Arkansas ("UAAA") - which would not allow arbitration of tort claims - because the 1999 Agreements provide that they will be governed by Arkansas law.

The problem with PRM's argument is that a provision that a *contract* will be governed by Arkansas law, and a provision that *arbitration under that contract* will be governed by Arkansas law, are not precisely the same thing.  In **Mastrobuono v. Shearson Lehman Hutton, Inc.**, **514 U.S. 52 (1995),** wherein the contract providing for arbitration was governed by New York law, the Supreme Court held that:

> the best way to harmonize the choice-of-law provision with the arbitration provision is to read "the laws of the State of New York" to encompass substantive principles that New York courts would apply, but not to include special rules limiting the authority of arbitrators.  Thus, the choice-of-law provision covers the rights and duties of the parties, while the arbitration clause covers arbitration; neither sentence intrudes upon the other.  In contrast, respondents' reading sets up the two clauses in conflict with one another:  one foreclosing punitive damages, the other allowing them.  This interpretation is untenable.

**514 U.S. at 63-64.**

PRM's contention that the choice of Arkansas law to govern the contracts would prohibit arbitration of tort claims sets up a conflict with the arbitration provisions of the 1999 Agreements, which provide for arbitration of all disputes "under this General Agreement."  PRM's position is thus "untenable" under **Mastrobuono**, and the Court continues to reject it.

4.  Defendants Mellott and Scott are principals in Primenergy.  Mellott owns 100% of the stock of Energy Process Technology Inc. ("EPTI"), the corporation which owns Primenergy.  Scott is Primenergy's President.  Mellott and Scott are alleged to have committed the torts of fraud, conspiracy, tortious interference with business expectancy, and misappropriation of trade secrets, all in connection with Primenergy's dealings with PRM.

The Court found, in its November 15, 2005, Order, that the tort claims against Mellott and Scott arise in the context of their employment by Primenergy, and that PRM's disputes with Primenergy were required to be arbitrated.  It follows under **CD Partners** that Mellott and Scott are entitled to enforce the arbitration provisions of the contracts between PRM and Primenergy, in order to use an arbitral forum to resolve the claims that PRM has brought against them in this case.

5.  Defendant Kobe Steel, Ltd. ("Kobe") stands in a different relationship to PRM.  It is alleged to have engaged in

negotiations - with both PRM and Primenergy - for the use of the gasification technology at the heart of the disputes between PRM and Primenergy. PRM alleges that Kobe committed the torts of conspiracy and tortious interference with contract in the course of Kobe's business dealings with Primenergy, which was at the time a licensee of PRM's gasification technology.

Kobe contends that the allegation that it is a co-conspirator of Primenergy, said to have induced Primenergy to breach its contracts with PRM, empowers it - under the rationale of **CD Partners** - to compel arbitration of PRM's claims.

In **MS Dealer Service Corp. v. Franklin**, 177 F.3d 942 (11th Cir. 1999), the Eleventh Circuit offered the following explanation for allowing an alleged conspirator to compel arbitration under an arbitration provision applicable to the plaintiff and its alleged co-conspirator:

> Although arbitration is a contractual right that is generally predicated on an express decision to waive the right to trial in a judicial forum, this court has held that the lack of a written arbitration agreement is not an impediment to arbitration. This is because there are certain limited exceptions, such as equitable estoppel, that allow nonsignatories to a contract to compel arbitration. A second exception exists when, under agency or related principles, the relationship between the signatory and nonsignatory defendants is sufficiently close that only by permitting the nonsignatory to invoke arbitration may evisceration of the underlying arbitration agreement between the signatories be avoided.
>
> \* \* \*
>
> Existing case law demonstrates that equitable estoppel allows a nonsignatory to compel arbitration in two different circumstances. First, equitable estoppel

> applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting [its] claims against the nonsignatory. When each of a signatory's claims against a signatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise[] out of and relate[] directly to the [written] agreement, and arbitration is appropriate. Second, application of equitable estoppel is warranted . . . when the signatory [to the contract containing the arbitration clause] raises allegations of . . . substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract. Otherwise, the arbitration proceedings [between the two signatories] would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted.

**177 F.3d at 947** (internal citations and quotation marks omitted). The court in **MS Dealer** then examined the claims asserted by a signatory of a contract containing an arbitration clause against a nonsignatory, and concluded that the nonsignatory could compel arbitration of those claims.

Given that **CD Partners** quotes from and relies on this passage in **MS Dealer**, the Court believes that it is of precedential value in this Circuit. When applied to plaintiff's First Amended Complaint Against Kobe Steel, Ltd. (document #52), the Court believes that the reasoning of **CD Partners** and **MS Dealer** lead to the conclusion that Kobe can force PRM to arbitrate its disputes with Kobe. In the "Facts Specific To Kobe" section of that First Amended Complaint, PRM makes the following allegations against Kobe that make reference to or presume the existence of the 1999 Agreements:

* that Kobe "induced Primenergy to breach the 1999 Agreements by making proposals for projects in Japan";

* that Kobe "induced Primenergy into a conspiracy to deny PRM its rights to license the Gasification Technology in Japan";

* that Kobe "induced Primenergy into attempting to terminate all royalty provisions of the Territorial License Agreement";

* that Kobe and Primenergy entered into an "'exclusive collaboration' agreement" that was "in breach of Primenergy's territorial restrictions under the Territorial License Agreement"; and

* that Primenergy, Mellott, Scott, and Kobe agreed that Primenergy would engage in arbitration with PRM in an attempt to force PRM to lower royalty rates and broaden territory for the license of the technology.

The foregoing allegations are repeated in the various Counts of the First Amended Complaint, and the relief requested is stated in terms of injunctions that would protect PRM's alleged intellectual property rights under the 1999 Agreements.

Because all of PRM's claims against Kobe either make reference to or presume the existence of the 1999 Agreements, and allege "substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract" the Court concludes that Kobe can force PRM to arbitrate

the dispute between them.

6. EPTI, Heater Specialists, Inc. ("Heater Specialists") and Mohawk Field Services, Inc. ("Mohawk"), collectively the "EPTI Affiliates," make essentially the same arguments as Mellott and Scott, differing primarily in that these defendants are organizations, rather than natural persons, affiliated with Primenergy. While conceding that they have no Eighth Circuit case law directly on point, the EPTI Affiliates reason that **CD Partners** is logically applicable, and they cite case law from other jurisdictions dealing with affiliated entities in a like context.

The Court agrees that the reasoning of **CD Partners** applies to the EPTI Affiliates. In its Counterclaim Against Energy Process Technologies, Inc., Heater Specialists, Inc., And Mohawk Field Services, Inc., PRM relies heavily on the terms of the 1999 Agreements. For example, it alleges:

\*   that Primenergy, "individually and with its affiliates, EPTI, Mohawk and HSI, willfully breached the 1999 Agreements" in various ways;

\*   that EPTI engaged in a variety of fraudulent acts with Primenergy, Mellott and Scott, designed to defraud PRM of rights under the 1999 Agreements;

\*   that the EPTI Affiliates, along with Primenergy, Mellott, Scott, and Kobe, "combined to accomplish some purpose, not itself unlawful, oppressive or immoral, by unlawful,

oppressive or immoral means, to injure PRM by unlawfully withhold [sic] information that rightly belonged to PRM under the 1999 Agreements"; and

* that the EPTI Affiliates misappropriated trade secrets of PRM in violation of the 1999 Agreements.

Because PRM's claims against the EPTI Affiliates either make reference to or presume the existence of the 1999 Agreements, PRM's claims arise out of and relate directly to 1999 Agreements, and arbitration of those claims is appropriate.

7. Movants also contend that PRM's claims against them are barred by *res judicata*, given that those claims are subject to arbitration and the arbitration between PRM and Primenergy has been concluded[1]. The Court disagrees.

*Res judicata* bars relitigation of claims which were actually litigated in a previous suit, and those which could have been litigated. **Banks v. International Union of Electronic, Technical, Salaried and Machine Workers**, 390 F.3d 1049 (8th Cir. 2004); **Barclay v. Waters**, 357 Ark. 386, 182 S.W.3d 91 (2004). It is not at all clear that PRM could have forced any of the movants into arbitration, and thus not clear that PRM's claims against the movants could have been arbitrated when it engaged in arbitration

---

[1] Kobe also contends that principles of collateral estoppel apply to the claims asserted against it by PRM. While that may be true, collateral estoppel, or issue preclusion, looks at much smaller aspects of a dispute than the overall "claim," and the Court believes it must be left to the arbitrator to determine in which specifics, if any, collateral estoppel may be applicable.

-11-

with Primenergy. The circumstances under which a signatory can force a nonsignatory into arbitration are much narrower than those under which a nonsignatory can force a signatory into arbitration. See **Thomson-CSF, S.A. v. American Arbitration Association**, **64 F.3d 773 (2nd Cir. 1995)**. It is not shown that any of these circumstances obtains in this case. The Court, therefore, concludes that principles of *res judicata* do not justify dismissal of PRM's claims against movants.

8. As an alternative to outright dismissal, movants ask that, if the Court determines that arbitration is the appropriate method to resolve the claims asserted against them by PRM, this case be stayed until such arbitration is complete.

PRM, for its part, contends that the moving parties have not actually asked the Court to compel arbitration of PRM's claims against them, but only want to use the **CD Partners** analysis to obtain a dismissal of those claims.

The Court believes that a fair reading of the motions now under consideration reflects a request on the part of the movants that the Court compel arbitration of PRM's claims against them if they do not succeed in having those claims dismissed, and that a stay pending the conclusion of such arbitration is appropriate.

**IT IS THEREFORE ORDERED** that the **Motion Of Individual Defendants Mellott And Scott For Judgment On Pleadings** (document #56) is **granted in part and denied in part**. The motion is **denied**

insofar as it seeks dismissal of PRM's claims against Don R. Mellott and W.N. (Bill) Scott, and **granted** insofar as it seeks to compel arbitration of those claims and a stay of these proceedings pending the outcome of such arbitration.

**IT IS FURTHER ORDERED** that **Kobe Steel, Ltd.'s Motion For Judgment On The Pleadings** (document #63) is **granted in part and denied in part.** The motion is **denied** insofar as it seeks dismissal of PRM's claims against Kobe Steel, Ltd., and **granted** insofar as it seeks to compel arbitration of those claims and a stay of these proceedings pending the outcome of such arbitration.

**IT IS FURTHER ORDERED** that the **Motion To Dismiss Of "Counter Defendant" Energy Process Technologies, Inc. And "Third Party Defendants" Heater Specialists, Inc. And Mohawk Field Services, Inc.** (document #65) is is **granted in part and denied in part**. The motion is **denied** insofar as it seeks dismissal of PRM's claims against Energy Process Technologies, Inc., Heater Specialists, Inc., and Mohawk Field Services, Inc., and **granted** insofar as it seeks to compel arbitration of those claims and a stay of these proceedings pending the outcome of such arbitration.

**IT IS FURTHER ORDERED** that this matter is administratively terminated, subject to being reopened by any party for further proceedings upon the conclusion of arbitration.

**IT IS SO ORDERED.**

/s/ Jimm Larry Hendren
JIMM LARRY HENDREN
UNITED STATES DISTRICT JUDGE